S11G0682. BUNN v. THE STATE.
(728 SE2d 569)

NAHMIAS, Justice.

We granted certiorari to consider whether the Court of Appeals improperly limited this Court's holding in Division 3 of *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998). *Woodard* struck down, as a violation of the equal protection of the law, a 1995 amendment to the Child Hearsay Statute, OCGA § 24-3-16, that expanded the scope of the hearsay exception to allow the admission of out-of-court statements by all children under age 14 who witnessed sexual contact or physical abuse, as opposed to only children who were themselves the

---

victims of such abuse. Having carefully re-examined *Woodard*'s Division 3, we conclude that its reasoning cannot be sustained. Thus, while it clearly should not be extended to the circumstances of this case, we think it is more appropriate simply to overrule Division 3.[1] Accordingly, there is no reversible error, and we affirm the Court of Appeals' judgment.

1. Appellant Michael Shane Bunn moved in with his step-sister sometime in 2005, becoming the primary after-school care provider for his two nieces, who were ages seven and nine at the time of trial. On January 20, 2006, the girls told their mother that Appellant had put his hand down their pants; they later said that Appellant also licked their private parts and touched his penis to their vaginal areas. The mother contacted law enforcement, and the children were separately interviewed by a forensic therapist at a child advocacy center. The interviews were video recorded.

At trial in May 2006, each girl testified about what Appellant had done to her and what she saw Appellant do to her sister, and Appellant cross-examined the children. The girls' mother and the forensic therapist also testified against Appellant, and the recording of the children's forensic interviews was played for the jury. Like the children's in-court testimony, this evidence included not only each girl's out-of-court statements about sexual contact Appellant had with her, but also sexual contact she saw Appellant have with her sister. Appellant testified in his own defense, denying any wrongdoing. The jury convicted Appellant of two counts each of cruelty to children in the first degree, aggravated child molestation, and child molestation. He was sentenced to serve a total of 12 years in prison followed by 18 years on probation. The trial court denied Appellant's motion for new trial, and he timely appealed.

The Court of Appeals affirmed, rejecting Appellant's claim that his trial counsel was ineffective in failing to make a hearsay objection when the forensic therapist testified about what each child said she saw Appellant do to the other child and when the unredacted recording of the children's interviews was played for the jury. See *Bunn v. State*, 307 Ga. App. 381, 386 (705 SE2d 180) (2010). The court held that Division 3 of *Woodard* was "inapplicable here, because *both* girls were victims" and not only witnesses to the other's molestation. Id. at 386 (emphasis in original). Thus, the Court of Appeals concluded that the children's out-of-court statements about sexual conduct that

---

[1] Division 2 of *Woodard*, which was unanimous, clarified the law regarding the admission of a witness's prior consistent statements as substantive evidence. See 269 Ga. at 318-321. Our decision today casts no doubt on that portion of *Woodard*.

happened to each other in their presence were admissible under OCGA § 24-3-16 and not subject to proper objection, thereby defeating Appellant's ineffective assistance of counsel claim. See *Bunn*, 307 Ga. App. at 386. We granted certiorari.

2. (a) As originally enacted in 1986, Georgia's Child Hearsay Statute provided as follows:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Ga. L. 1986, p. 668, § 1.[2] This Court rejected various constitutional challenges to the validity of the statute as originally enacted. See *Woodard*, 269 Ga. at 318 ("This Court repeatedly has upheld the constitutionality of the Child Hearsay Statute to the extent that it allows the introduction of hearsay statements made by the child victim of sexual or physical abuse, so long as the statutory prerequisites for admitting such statements exist." (citing cases)).

In 1994, however, we held, as a matter of statutory interpretation, that the Child Hearsay Statute did not apply to out-of-court statements by a child under age 14 describing physical abuse he saw the defendant inflict on two other young children. See *Thornton v. State*, 264 Ga. 563, 564 (449 SE2d 98) (1994). The original OCGA § 24-3-16 admitted only statements "by a child under the age of 14 years describing any act of sexual contact or physical abuse *performed with or on the child by another*." (Emphasis added.) Thus, the statute, "by its own language, except[ed] from the hearsay rule 'only . . . such statements as are made by the *actual victim of the event being related.*'" *Thornton*, 264 Ga. at 565 (citation omitted; emphasis in original).

In response to *Thornton*, the next year the General Assembly

---

[2] Prompted by growing public awareness of the prevalence of and harm caused by child abuse, by the early 1990s about half the states had formally enacted, by statute or rule, exceptions to the hearsay rule for certain out-of-court statements by children. See Robert P. Mosteller, Remaking Confrontation Clause and Hearsay Doctrine under the Challenge of Child Sexual Abuse Prosecutions, 1993 U. Ill. L. Rev. 691, 697 & n. 20 (1993). See also 2 Kenneth S. Broun, McCormick on Evidence § 272.1 (6th ed. 2006) (explaining the development of the child hearsay, or "tender years," exception to the hearsay rule and its connection to the historical hearsay exception for fresh complaints of rape).

amended OCGA § 24-3-16 to add the phrase italicized below:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another *or performed with or on another in the presence of the child* is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Ga. L. 1995, p. 937, § 1 (emphasis added). See Vicki Lynn Bell, Note, Peach Sheets, Evidence, 12 Ga. St. U. L. Rev. 197, 197-200 (1995). Thus, the hearsay exception was no longer limited to out-of-court statements by the child who was the victim of the defendant's sexual contact or physical abuse — or to statements about sexual contact or physical abuse committed against children.

In Division 3 of *Woodard*, this Court considered the constitutionality of the 1995 amendment. See 269 Ga. at 317. Woodard sexually molested a five-year-old child in front of her six-year-old friend, and both children testified at trial. See id. An investigator testified that the victim's young friend told him during an interview that she saw Woodard put his hand in the victim's pants, and a video recording of that interview was played for the jury. See id. at 317-318. Woodard was convicted of one count of child molestation. See id. at 318. Over dissent on this issue,[3] this Court reversed Woodard's conviction, holding in Division 3 that the 1995 amendment was unconstitutional because it deprived Woodard of equal protection. See id. at 321-323. This case requires us to reexamine the reasoning underlying that holding to decide if the Court of Appeals improperly limited it.

(b) In deciding an equal protection challenge, the level of scrutiny applied by the court depends on the nature of the distinction drawn by the legislation at issue. If neither a suspect class nor a fundamental right is implicated, the most lenient level of judicial review — "rational basis" — applies. See *Ambles v. State*, 259 Ga. 406, 407 (383 SE2d 555) (1989). Rational basis review involves a two-prong evaluation of the challenged statute. "Initially, the claimant must establish that he is similarly situated to members of the class who are treated differently from him. Next, the claimant must establish that there is no rational basis for such different treatment." *Drew v. State*, 285 Ga.

---

[3] Then-Justice Carley's dissent, which then-Justice Hunstein joined, argued that the majority erred in reaching out to decide the case on equal protection grounds because "Woodard's equal protection challenge was not raised or ruled upon in the trial court." *Woodard* at 325 (Carley, J., dissenting). The dissent addressed and found meritless the Confrontation Clause claim Woodard had raised in the trial court. See id.

848, 850, n. 3 (684 SE2d 608) (2009) (citation omitted). And because " 'the legislation is presumptively valid, the claimant has the burden of proof as to both prongs.' " Id. (citation omitted).

*Woodard* accurately described the 1995 amendment to the Child Hearsay Statute as creating a disparity in the substantive evidence admissible against defendants charged with identical crimes (in Woodard's case, child molestation) "based on nothing more than the age of the hearsay declarant." 269 Ga. at 322. Because no suspect class or fundamental right was implicated by the statute, the Court correctly identified rational basis review as the test for evaluating the equal protection claim. See id. at 323 (referring three times to "rational basis"). The Court held that Woodard satisfied the first prong of the test because "for equal protection purposes, . . . all defendants accused under the Code of child molestation are similarly situated" with respect to the Child Hearsay Statute. Id. at 322. This may be true; it is on the second prong of the rational basis analysis that *Woodard* went awry.

The *Woodard* majority started its analysis of that point by saying, "We cannot identify any rational basis for this disparity," that is, for the difference between the evidence potentially admissible at the trial of a defendant who committed his child molestation crime in front of another child and the evidence admissible against a defendant who committed the same crime in the presence of someone older than 14. Id. at 323. The Court accepted the premise that the State has a legitimate interest in protecting certain types of witnesses more than others, noting that "compelling reasons . . . support the admission of hearsay statements made by a child victim of physical or sexual abuse." Id. In other words, the Court recognized that an interest in protecting certain witnesses more than others can justify a disparity in the evidence admissible against defendants accused of the same crime. The Court explained:

> There are several compelling reasons for allowing a child victim's hearsay statements to come into evidence, including (1) society's desire to spare children who are subjected to abuse from further unnecessary trauma in the courtroom; (2) ensuring that the jury hears the statement of a child who has been traumatized by abuse and is psychologically unable to recount that incident while testifying; and (3) to protect the rights of victimized children who cannot defend those rights for themselves.

Id. at 323.

The Court then addressed Woodard's situation, where the trial court had admitted out-of-court statements by the six-year-old friend who witnessed Woodard's assault on the victim but was not herself a victim of the crime for which Woodard was on trial. The Court concluded that there was "no rational basis" for the State to protect this young child and others like her from having to testify about the criminal physical abuse and sexual contact to which they had been exposed at the trial of the person accused of such crimes. *Woodard* at 323. The court explained its rationale as follows:

> These same public policy reasons [that justify excusing a child victim from testifying at trial], however, do not support admitting the hearsay statements of children who only witness acts of physical or sexual abuse. The hearsay statements of children younger than 14 who witness violent crimes that do not involve physical or sexual abuse, such as assault, are not admissible per se in criminal prosecutions against the perpetrators of those crimes. The impact on a child witness to a violent criminal act is, we believe, the same regardless of the crime that is witnessed. Nothing about the crime witnessed distinguishes a child who observes the assault of a parent from another child who witnesses the physical or sexual abuse of a sibling. Both are repugnant, and both can be equally damaging to the child witness's psyche. Yet the hearsay statement of the child who witnesses the assault is presumptively inadmissible, while the hearsay statement of the child observing the abuse is presumptively admissible. We believe that this illogical anomaly illustrates the lack of any rational basis for the disparity created by the amended statute.

Id. (footnote omitted).

This reasoning simply does not hold up. To begin with, while the reasons to protect (to some extent) children who have been victims of sexual and physical abuse from having to testify at a criminal trial may be *more* "compelling" than the reasons to protect children who have only witnessed a sexual or violent crime committed against another person, it does not follow that the State has *no* legitimate interest in also shielding such child witnesses from enduring the rigors of a criminal trial. A courtroom can be a scary place for a 13-year-old child, not to mention even younger children, when the child is required to testify and face cross-examination in front of a room full of adults, including the accused, a judge, and a dozen jurors, who scrutinize her every word about the criminal sexual or physical

abuse she has witnessed. This Court has recognized that simply witnessing a violent crime can cause a child "cruel and excessive mental pain," even when the child exhibits "no overt manifestations of trauma," because such trauma may be suppressed or delayed. *Hall v. State*, 261 Ga. 778, 782 (415 SE2d 158) (1991). The General Assembly could rationally decide that these children should be spared the additional or evoked trauma of having to re-live their experiences on the witness stand unnecessarily. The 1995 amendment to OCGA § 24-3-16 directly advanced this interest by removing a significant evidentiary obstacle to the admission of such a child's out-of-court statements as long as she is available to testify and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[4]

Moreover, there is nothing irrational about creating disparate classes of criminal defendants based on the young age of the witnesses to their crimes. The State's strong interest in protecting children from witnessing crimes involving "sexual contact or physical abuse" in the first place, much less from re-living that experience in courtroom testimony, is reflected in criminal offenses making it a form of cruelty to children to intentionally or knowingly allow a child under the age of 18 to witness a forcible felony, battery, or family violence battery, see OCGA § 16-5-70 (d) (1)-(2), and making it a felony to commit "any immoral or indecent act . . . in the presence of . . . any child under the age of 16 years with the intent to arouse or satisfy . . . sexual desires," OCGA § 16-6-4 (a) (1).[5] See, e.g., *Alexander*

---

[4] Division 3 of *Woodard* is not the only obstacle to admitting a child's out-of-court statements about sexual contact or physical abuse committed in the child's presence. Even if OCGA § 24-3-16 authorizes the admission of such evidence as an evidentiary matter, it may still be inadmissible as a violation of the accused's rights under the Confrontation Clause. See U. S. Const. Amend. VI; Ga. Const. of 1983, Art. I, Sec. I, Par. XIV. See also *Hatley v. State*, 290 Ga. 480, 482 (722 SE2d 67) (2012) (holding that, to comport with the Confrontation Clause, OCGA § 24-3-16 requires that the child whose statements are at issue not merely be "available to testify" but actually testify at trial, unless the defendant forfeits or waives such testimony, and requiring pretrial notice of the State's intent to use child hearsay statements to allow the defendant to exercise that right). Appellant concedes that he did not raise a Confrontation Clause objection at trial and that he could not successfully claim that his counsel was ineffective for failing to do so because both children testified at trial. See *Crawford v. Washington*, 541 U. S. 36, 59, n. 9 (124 SC 1354, 158 LE2d 177) (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

[5] See also OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree [punishable by five to 20 years in prison] when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."), (c) ("Any person commits the offense of cruelty to children in the second degree [punishable by one to ten years in prison] when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain."); *Hall*, 261 Ga. at 782 (recognizing that witnessing a violent crime can cause a child "cruel and excessive mental pain"); *Reyes v. State*, 250 Ga. App. 769, 770 (552 SE2d

*v. State*, 274 Ga. 787, 789 (561 SE2d 64) (2002) (affirming conviction for second-degree child cruelty where the defendant caused her 19-month-old child to witness the physical abuse of a sibling); *Grimsley v. State*, 233 Ga. App. 781, 785 (505 SE2d 522) (1998) (affirming a married couple's convictions for child molestation under OCGA § 16-6-4 (a) (1) for repeatedly and openly engaging in sexual intercourse in front of their own children and other children ages nine to 14). Indeed, in this case Bunn was convicted of first-degree child cruelty for causing "cruel mental pain" to the victims, *Bunn*, 307 Ga. App. at 382, yet he makes no claim that OCGA § 16-5-70 (b) violates equal protection because it does not prohibit the same conduct toward an adult.

Convictions under these criminal statutes that protect only children under certain ages have routinely been affirmed by Georgia's appellate courts without any question of their rational basis. And if it is rational to *imprison* a defendant who causes a child to witness sexual contact or physical abuse, it is surely rational to make the defendant merely deal with *hearsay* from such a child (whom the defendant may require to appear in court to testify and face cross-examination, see footnote 4 above).

Finally, the fact that the General Assembly loosened the hearsay rule for child witnesses to crimes involving only sexual contact and physical abuse, as opposed to all crimes or all violent crimes, should pose no problem under rational basis review. *Woodard's* Division 3 described this feature of the 1995 amendment to OCGA § 24-3-16 as an "illogical anomaly," asserting:

> The impact on a child witness to a violent criminal act is, we believe, the same regardless of the crime that is witnessed. Nothing about the crime witnessed distinguishes a child who observes the assault of a parent from another child who witnesses the physical or sexual abuse of a sibling. Both are repugnant, and both can be equally damaging to the child witness's psyche.

*Woodard*, 269 Ga. at 323. This passage is inconsistent with any claim that a child's witnessing of physical or sexual abuse does not give the

---

918) (2001) (affirming conviction for second-degree child cruelty where the defendant committed a forcible felony against a two-year-old child's mother knowing that the child was present and watching); *Walden v. State*, 289 Ga. 845, 847 (717 SE2d 159) (2011) (noting that even exposing a child to unsanitary conditions may constitute criminal cruelty under certain circumstances).

State a rational interest in shielding that child from in-court testimony about that experience. It also indicates a misunderstanding of the amended statute, which would exclude child hearsay only if the "assault" on the parent did not involve any "sexual contact or physical abuse," since the 1995 amendment did not limit such abuse to that committed against a "sibling" or other child. See also *Bartlett v. State*, 244 Ga. App. 49, 51 (537 SE2d 362) (2000) (upholding convictions for second-degree child cruelty where the defendant threatened but did not physically abuse the children's father).

But more importantly, the *Woodard* majority's " 'all or nothing' approach, which questions the wisdom of the legislature's [incremental] action, conflicts with established principles of constitutional law." *Farley v. State*, 272 Ga. 432, 434 (531 SE2d 100) (2000). It is firmly established that, in areas subject only to rational basis review, the legislature may " 'address a problem "one step at a time," or even "select one phase of one field and apply a remedy there, neglecting the others," ' " without violating equal protection. Id. (citations omitted). Thus, far from being an "illogical anomaly," the Child Hearsay Statute's limitation to child witnesses under age 14 and to a subset of crimes that may be particularly traumatic for children to witness and testify about represents the sort of line-drawing and balancing of rights and interests regularly and properly done by legislatures. See, e.g., OCGA §§ 16-3-1 (establishing 13 as the age of criminal responsibility), 16-6-3 (establishing 16 as the age of consent); *City of Dallas v. Stanglin*, 490 U. S. 19, 25-26 (109 SC 1591, 104 LE2d 18) (1989) (applying rational basis review and finding no equal protection violation where a city ordinance restricted admission to certain dance halls to persons between the ages of 14 and 18); *Jones v. Goodwin*, 982 F2d 464, 468, n. 6 (11th Cir. 1993) (rejecting as "preposterous" the habeas petitioner's claim that Georgia's rape shield statute violates equal protection by distinguishing between rape defendants and other criminal defendants in the admission of evidence).

It is also worth noting that the holding in Division 3 of *Woodard* is an anomaly in our law. "Rules of evidence, being procedural in their nature, are peculiarly discretionary with the law-making authority. . . ." *Salsburg v. Maryland*, 346 U. S. 545, 550 (74 SC 280; 98 LE 281) (1954). As a result, "litigants rarely have invoked the equal protection doctrine when challenging the validity of evidentiary rules," and "[i]n the handful of cases addressing equal protection challenges, courts typically reject the argument without any extended analysis." Edward J. Imwinkelried, Of Evidence and Equal Protection: The Unconstitutionality of Excluding Government Agents' Statements Offered as Vicarious Admissions Against the Prosecution, 71 Minn. L. Rev. 269, 272 (1986). The *Woodard* majority cited no

precedent for its striking down an evidentiary statute under rational basis review, nor have we ever done so again. Even the dissent makes no effort to defend *Woodard*'s reasoning.

In sum, after careful reflection, we conclude that Division 3 of *Woodard* was wrongly decided.

(c) The Court of Appeals held that *Woodard* did not extend to hearsay by children who were both victims of and witnesses to sexual or physical abuse, rather than only being witnesses. See *Bunn*, 307 Ga. App. at 386. It is clear that the Court of Appeals' holding is correct, because, as just discussed, there is a rational basis to treat child witnesses to such criminal conduct differently from other witnesses, and that is even more true when the child has also been a victim.

(d) Thus, like the Court of Appeals, we could simply decline to extend *Woodard*'s Division 3 to the circumstances presented in this case. However, having determined that Division 3 was wrongly decided, we believe that the better course is simply to overrule it. The legislature cannot correct our error by amending OCGA § 24-3-16, because *Woodard*'s holding was a misapplication of the Constitution, not the statute.[6] In addition, because that holding almost always excludes evidence offered by the State, it is unlikely to be corrected in a State's appeal seeking to overrule it. Unless we overrule *Woodard*'s Division 3, trial courts will be obligated to continue following it to exclude evidence that we have explained should be admissible, and the State will not be able to appeal those rulings. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *Berky v. State*, 266 Ga. 28, 29 (463 SE2d 891) (1995) (holding that OCGA § 5-7-1 (a) does not authorize the State to appeal the trial court's exclusion of evidence on general evidentiary grounds). Compare *State v. Jackson*, 287 Ga. 646, 646 (697 SE2d 757) (2010) (overruling a precedent in a case where the

---

[6] In accordance with *Woodard*, the General Assembly removed the language added by the 1995 amendment from the Child Hearsay Statute when carrying it forward in the new Georgia evidence code, which will take effect on January 1, 2013. See OCGA § 24-8-820. It is nevertheless appropriate for us to correct Division 3 of *Woodard*, both because it governs cases in the interim and to make clear that the General Assembly has the authority to amend the statute as it did in 1995 if it so chooses. The dissent's assertion, see Dis. Op. at 193, that the General Assembly "give[s] its implicit legislative approval" to a decision by this Court that a statutory provision is *unconstitutional*, unless it manages to abrogate the decision by the momentous and difficult act of amending the Constitution – an act ultimately taken by the people of Georgia, not the General Assembly – is unsupported by any authority. And it is deeply ironic for the dissent to claim that our overruling of *Woodard*'s Division 3 "has the same effect as 'judicial alteration of language that the General Assembly itself placed in the statute.'" Dis. Op. at 194 (citation omitted). To the contrary, our decision today *restores* validity to "language that the General Assembly itself placed in the [Child Hearsay] statute" (specifically to overcome our statutory decision in *Thornton*) — language that was effectively *deleted* by our erroneous constitutional decision in *Woodard*.

trial court correctly followed the precedent in dismissing an indict-ment, a ruling the State could then appeal for the purpose of asking that the precedent be reconsidered).

Having overruled the holding of Division 3 of *Woodard*, it follows that the Court of Appeals committed no reversible error in declining to extend that holding to the circumstances of this case. Accordingly, we affirm the Court of Appeals' judgment. See *MCG Health, Inc. v. Owners Ins. Co.*, 288 Ga. 782, 786 (707 SE2d 349) (2011) (affirming the Court of Appeals' judgment on certiorari under the right-for-any-reason doctrine).

*Judgment affirmed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

I dissent because I believe the Court of Appeals erred when it ruled that trial counsel's failure to object to a therapist's testimony relating to hearsay statements did not constitute deficient perfor-mance. *Bunn v. State*, 307 Ga. App. 381 (3) (d) (705 SE2d 180) (2010). Accordingly, I would remand the case to the Court of Appeals to complete its analysis of appellant's claim of ineffective assistance of counsel. I also take issue with the majority's unnecessary act of overruling this Court's decision in *Woodard v. State*, 269 Ga. 317 (3) (496 SE2d 896) (1998).

1. In granting Bunn's petition for a writ of certiorari, this Court fashioned the issue as whether the Child Hearsay Statute permitted a witness to testify as to what one of the defendant's child victims said she saw Bunn do to another child victim. In *Woodard v. State*, supra, 269 Ga. 317 (3), this Court ruled that a defendant's constitutional right to equal protection was violated by the statute permitting the use in court of consistent hearsay statements of a child witness concerning acts of sexual conduct or physical abuse the child has witnessed. We recognized that the compelling reasons that supported admission of hearsay statements made by a child *victim* were not applicable to a child *witness* of abuse.[7] In the fourteen years since that judicial declaration, the General Assembly, by its inaction, has acqui-esced and given its implicit legislative approval of our decision. While

---

[7] Now-Chief Justice Carley, joined by now-Presiding Justice Hunstein, dissented from this portion of *Woodard* not because they believed the statute did not violate equal protection, but because they believed this Court lacked subject-matter appellate jurisdiction to decide that issue. *Woodard v. State*, supra, 269 Ga. at 324 (Carley, J., dissenting) ("we have no jurisdiction [to hold the statute violates equal protection] because the only constitutional challenge which was ever raised and ruled on below was that [the statute] violates the confrontation clause.").

the majority asserts that the constitutionally-based decision in *Woodard* effectively tied the legislature's hands, I cannot agree that the General Assembly was rendered helpless — the Georgia Constitution authorizes the legislature to propose a constitutional amendment via resolution and submission to the voters. 1983 Ga. Const., Art. X, Sec. I, Pars. I-II. This Court's interpretation of the statute has become an integral part of the statute and the majority's re-interpretation today has the same effect as "judicial alteration of language that the General Assembly itself placed in the statute." *Mitchell v. State*, 239 Ga. 3 (2) (235 SE2d 509) (1977). The Court should acknowledge the judicial policy of stare decisis and "adhere to what it has previously decided and not disturb what is settled." Id.

To make matters worse, the majority acknowledges that its radical action is not required to resolve the issue on appeal in the case before us. Maj. Op., Division 2 (d). The majority could, instead, adopt the restrictive interpretation of *Woodard* taken by the Court of Appeals in its decision in *Bunn*. There, the Court of Appeals read the holding in *Woodard* as being a prohibition against the use of hearsay statements made by a child who only witnessed physical or sexual abuse inflicted on another. *Bunn v. State*, supra, 307 Ga. App. 381 (3) (d). Where, as here, the child hearsay declarant is both witness and victim, the Court of Appeals ruled *Woodard* has no application. Just as we address the issue of a statute's constitutionality only as a matter of last resort, so should we be guided in overturning decisions of this Court.[8]

2. I do not read *Woodard* as narrowly as did the Court of Appeals in its decision in *Bunn*. I agree that both children were victims and therefore the Child Hearsay Statute authorized the admission of the out-of-court statements of each child recounting the facts of the crime committed against her. I continue to believe that the defendant's right to equal protection prohibits the admission of testimony repeating another witness's out-of-court prior consistent statements in which the witness recounted what she observed, unless the witness's

---

[8] It appears that the majority's disposal of equal protection as a basis for restricting the in-court use of child witnesses' out-of-court statements will serve to resurrect defense contentions that the Child Hearsay Statute violates the Confrontation Clause. See Maj. Op. at 189, n. 4. If a child is required to testify at trial in order to satisfy the Confrontation Clause (see *Hatley v. State*, 290 Ga. 480, 483 (722 SE2d 67) (2012)), have we not lost the underlying public policy for enactment of the Child Hearsay Statute, i.e., to spare children the trauma of a courtroom appearance and to allow others to speak for a child psychologically unable to recount the incident while testifying? See *Fowler v. State*, 251 Ga. App. 787 (2) (554 SE2d 808) (2001) ("There is no legal requirement that a child victim testify in person; in fact, the purposes of the Child Hearsay Statute, OCGA § 24-3-16, include the presentation of evidence without the in-person testimony of the child victim. . . .").

veracity has been placed in issue. *Woodard v. State*, supra. Accordingly, it was error to admit the portion of the children's out-of-court prior consistent statements that recounted each child's observation of what Bunn did to the other child, as that hearsay evidence served only to bolster the young witness's credibility. Therefore, it was deficient performance on the part of trial counsel to fail to object to the testimony that amounted to improper bolstering of the child's testimony with regard to what she had witnessed. I would reverse Division 3 (d) of the Court of Appeals's opinion and remand the case to that court for completion of the analysis of appellant's claim of ineffective assistance of counsel.

DECIDED JUNE 18, 2012.

*Sheueli C. Wang*, for appellant.
*J. Bradley Smith, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.