**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 21, 2013**

# In the Court of Appeals of Georgia

A12A1672. MAURER v. THE STATE.

BOGGS, Judge.

A jury found David Edward Maurer guilty of child molestation. Following the denial of his amended motion for new trial, Maurer appeals, asserting several claims of error. Having reviewed these claims, we discern no error and affirm.

Construed in favor of the verdict, the evidence showed that in July 2007 Maurer was watching a movie in the garage while lying on a blow-up mattress with his then 10-year-old stepdaughter V. G. and her younger brother. At some point, after the younger brother had fallen asleep, Maurer made V. G. massage his penis to the point of ejaculation. The next day, V. G. told her older brother B. G. what happened the night before. The following week, the brother disclosed to his mother what V. G. had told him. The family said nothing about the incident until two years later, when

the mother told a close friend what Maurer had done to V. G. The friend reported the incident to police.

V. G. took the stand, and when asked about what occurred in July 2007 she responded, "I don't want to talk about it," and repeated that assertion throughout her testimony. She explained that Maurer "was a great father to all of us and we cared very much about him and I don't want to talk about it and I don't want to see him get prosecuted or anything. That's why I don't want to talk about it." When asked why she "can't come in here and tell the truth about what happened," V. G. stated, "Because we had forgave [sic] him a long time ago and I don't want anything to happen to him." And when asked "what did you forgive him for?," she replied, "I don't want to say." She did state, however, that Maurer was her step-father, that he lived with her and her family in July 2007, that during that month, she was watching a movie with Maurer and her younger brother in the garage, and that her younger brother fell asleep. She acknowledged that she spoke with a forensic interviewer, stated that what she told the interviewer was the truth, and admitted that she had told her older brother B. G. "about something that happened."

The forensic interviewer testified that she interviewed V. G. in January 2009. Using an anatomical drawing, V. G. indicated that Maurer made her touch his penis.

2

In the forensic interview, admitted into evidence and played for the jury, V. G. stated that she was lying between Maurer and her younger brother while watching a movie in the garage. She explained that Maurer pushed his shorts down, grabbed her hand, put it on his penis, and moved it up and down. She said that Maurer was drunk and was "pushing her down" under the covers. V. G. explained further that something white "squirted out" and onto her forehead. She heard Maurer say "I'm sorry, I'm sorry," as he fell asleep.

V. G. told the interviewer that the next day, she told B. G. what happened the night before and that B. G. told her mother the following week. She stated that the three of them discussed the incident as a family and that she forgave Maurer. Near the end of the interview, V. G. stated that she had nightmares following the incident.

V. G.'s older brother, B. G., took the stand and when asked about "something troubling [him] in July of 2007," he responded, "I don't really want to answer any questions or anything." B. G. admitted that the prosecutor talked to him the Friday before trial and that they "went over a lot of things that your sister, [V. G.], had told you[.]" He too stated, "I just don't want to see him prosecuted or anything like that . . . he's always been there for us."

V. G.'s mother took the stand and initially stated that she did not "want to answer any questions" and that she "want[ed] to end this. I don't want to see [Maurer] prosecuted. I care a lot about him." When the trial court directed her to answer the questions posed by counsel, the mother stated that B. G. "told me that one night when we were at home watching movies the kids decided to go watch a movie . . . he told me that [V. G.] had told him what - - that [V. G.] told him that next morning that [Maurer] had [V. G.] massage his private . . . his penis." She stated further that B. G. told her he observed "some stuff on [ V. G.'s] hair, just some white stuff." The mother testified that she asked V. G. "if what [B. G.] was saying was true and she just nodded her head . . . . She said yes. She nodded [her head] and was crying." When she later asked V. G. exactly what happened, V. G. told her that Maurer had her touch and massage his penis and that V. G. demonstrated that she did so "with her hand going up and down." She explained further that she, V. G. and B. G. "talked about it . . . and we decided to give him another chance because we believe he was drunk. He had been drinking a lot at the time."

A detective testified that the mother told her that "in July of 2007 [Maurer] had made her daughter, [V. G.], touch his private. It was disclosed to her by her older son when [V. G.] woke up . . . he saw her and she had some stuff on her head and in her

4

hair." Maurer agreed to speak with police, and in a recorded interview, admitted into evidence and played for the jury, Maurer told the detective that he did watch a movie on a mattress with V. G. and her younger brother in the garage and that the three of them fell asleep. But he explained that he had no memory of what happened that night and that he was "excessively" drunk. At different times during the interview, Maurer stated he did not believe that he had V. G. touch him, but at other points he stated that it must be true because it was what he was told, and that he "can't see [V. G.] making it up." Maurer explained that his family had forgiven him and that they were trying to move past the incident in the hopes that V. G. would forget.

1. Maurer argues that the evidence was insufficient to sustain his conviction.

On appeal of a criminal conviction, this Court's duty is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . *Jackson v. Virginia*, 443 U. S. 307, 319 (II) (B) (99 SC 2781, 61 LE2d 560) (1979). The appellant no longer enjoys the presumption of innocence. Moreover, the Court does not re-weigh the evidence or resolve conflicts in testimony, but rather defers to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007). The evidence summarized above was sufficient to sustain Maurer's conviction for child molestation under the standard of *Jackson*, supra. See OCGA § 16-6-4 (a) (1) (a person commits child molestation when he does an "immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person"); *Westbrooks v. State*, 309 Ga. App. 398, 400-401 (1) (710 SE2d 594) (2011) (evidence sufficient to sustain child molestation conviction; although victim did not provide details of molestation, step-uncle and forensic interviewer testified to victim's disclosure); *Amerson v. State*, 268 Ga. App. 855 (1) (602 SE2d 857) (2004) (evidence sufficient to sustain molestation conviction; although victim refused to speak, forensic interview was admitted into evidence).

2. Maurer argues that his Sixth Amendment right to confrontation was violated because the trial court failed to compel V. G. to testify. V. G. took the stand and testified, but refused to answer questions concerning what occurred on the night she and her younger brother were in the garage with Maurer. She did state, however, that what she told the forensic interviewer was the truth, and that she had also told B. G. about the incident.

6

Under [former] OCGA § 24-3-16,[1] hearsay statements by underage victims of sexual abuse are admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability. The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under [former] OCGA § 24-3-16 only if the trial court abused its discretion.

*Estrada v. State*, ___ Ga. App. ___ (1) (Case No. A12A2475; decided February 14, 2013).

The Georgia Supreme Court has recently held that to comport with the Confrontation Clause, the child whose statements are at issue must actually testify at trial. *Hatley v. State*, 290 Ga. 480, 483 (I) (722 SE2d 67) (2012); see *Bunn v. State*, 291 Ga. 183, 189 (2) (b) n.4 (728 SE2d 569) (2012). But former OCGA § 24-3-16 "does not require the child to corroborate the hearsay testimony." (Citations and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 194 (1) (491 SE2d 387) (1997). And the right of confrontation may be waived by the failure to object. *Hatley*, supra. Here, Maurer made no objection that his right to confrontation was violated by

---

[1]This Code section was effective until January 1, 2013.

V. G.'s failure to answer questions concerning the incident. Moreover, we find no authority requiring that V. G. be compelled to testify about the incident. Indeed, one of the reasons for allowing a child victim's hearsay statement to come into evidence is "society's desire to spare children who are subjected to abuse from further unnecessary trauma in the courtroom." (Citation and punctuation omitted.) *Bunn*, supra, 291 Ga. at 187 (2) (b).

3. Maurer argues that the State was allowed to improperly introduce hearsay through its questioning of V. G. But because, as Maurer acknowledges, he made no objection to the State's questioning of V. G. on this ground, the issue is waived. See *Holt v. State*, 244 Ga. App. 341, 344 (2) (535 SE2d 514) (2000).

4. Maurer contends that he did not receive a fair *Jackson-Denno*[2] hearing. The record reveals that after the State presented the detective's testimony concerning Maurer's waiver of his rights under *Miranda* and the voluntariness of his statement to police, the trial court ruled that Maurer's statement to police was freely and voluntarily given. Trial counsel then informed the trial court that he had planned to call Maurer to testify on the issue. The trial court granted the request stating: "If you want to call him just for the *Jackson-Denno* hearing I'll reserve my ruling. I may

[2]378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

8

decide that he's not . . . didn't do it." Following Maurer's testimony, the trial court again found that Maurer "knowingly and intelligently waived his *Miranda* rights and that whatever statement he gave was freely and voluntarily given."

Maurer argues that the trial court's comments indicated that it had already determined that he was guilty of the charge against him, and that therefore any determination as to the admissibility of his statement "could not have been made fairly with an eye toward the requirements of *Jackson v. Denno*." But the court's willingness to allow Maurer to reopen the evidence so that he could testify was for Maurer's benefit. And any statement by the court that could be interpreted as an opinion of Maurer's guilt was harmless as it was made outside the presence of the jury, and the jury was charged with determining Maurer's guilt or innocence, not the trial court.

5. Maurer argues that it was error to allow an attorney not licensed to practice law in Georgia to present argument on his behalf. Prior to the start of trial, Maurer's trial counsel asked the trial court for permission to allow another attorney to assist him: "Your Honor, I had a motion on David Ward who is an attorney who's licensed in North Carolina and has his application to transfer here to Georgia pending, I would ask if the court would admit him to assist me at trial." After the State noted that it had

no objection, the trial court agreed: "Well, I'll so admit him and allow him to sit with you at the counsel table."

Maurer now argues that because there was no showing of a verified application as required by the Uniform Superior Court Rules (see Uniform Superior Court Rule 4.4 (D) (1)) and no discussion of the parameters of Ward's ability to assist, Ward's performance on his behalf was a nullity, and he was therefore denied the effective assistance of counsel. But Maurer was represented by trial counsel with the *assistance* of Ward, who only argued the motion for directed verdict on Maurer's behalf. And in the absence of a showing that Maurer was prejudiced in some way by Ward's argument, i. e., that the outcome of the ruling on his motion for directed verdict would have been different otherwise, his claim here that he received per se ineffective assistance is without merit. See, e. g., *Cornwell v. Dodd*, 270 Ga. 411, 412 (2) (509 SE2d 919) (1999) (ineffective assistance claim failed where no evidence result of guilty plea hearing would have been different); *King v. State*, 279 Ga. App. 302, 304-305 (3) (630 SE2d 905) (2006) (ineffective assistance claim failed where no showing defendant was prejudiced by presence of co-defendant's counsel at counsel table); cf. *Simmons v. State*, 291 Ga. 705, 713 (10) (a) (733 SE2d 280) (2012) (trial counsel not ineffective per se due to discipline or subsequent surrender of his license); *Cornwell*,

10

supra, 204 Ga. at 412 (1) (no per se rule of ineffectiveness where counsel represented criminal defendant while suspended from practice of law for failure to comply with state bar regulations).

6. Maurer contends that he received ineffective assistance of counsel in several other respects.

> To prevail on a claim of ineffective assistance, [Maurer] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, [Maurer] must prove that []he performed h[is] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms . . . And to show that he was prejudiced by the performance of his lawyer, [Maurer] must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, [supra,] 466 U. S. at 694 (III) (B) . . . This burden, though not impossible to carry, is a heavy one.

(Citations and punctuation omitted.) *Arnold v. State*, 292 Ga. 268, 269-270 (2) (___ SE2d ___) (2013). "[A]n insufficient showing on either [*Strickland*] prong[ ] relieves

the reviewing court of the need to address the other prong." (Citations and punctuation omitted.) *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

(a) Maurer contends that trial counsel was ineffective in failing to object that an incompetent juror was allowed to remain on the jury panel. The record reveals that at the start of voir dire examination, the court questioned the panel of jurors in accordance with OCGA § 15-12-164 (a) (1) - (4).[3] When Juror #133 indicated that he was "not totally impartial," the trial court found that "with one exception that the jurors are statutorily qualified." Maurer's counsel and the State then proceeded to conduct voir dire of all the jurors, during which Juror #133 was questioned concerning his impartiality.[4] At the end of voir dire, trial counsel moved to strike the juror. After the prosecutor stated that he had no objection, the trial court struck the juror for cause.

---

[3]In a felony trial, on voir dire examination the jurors shall be asked . . . "Have you, for any reason, formed and expressed any opinion in regard to the guilt or innocence of the accused?[;] . . . "Have you any prejudice or bias resting on your mind either for or against the accused?[;]" . . . "Is your mind perfectly impartial between the state and the accused?"

[4]The juror explained that he has "work[ed] closely" with an unnamed organization for a number of years that "works in this area and I believe it's going to make me bias[ed] on the [S]tate's side."

Maurer complains that counsel was ineffective in failing to object that this juror was allowed to remain seated with the panel and questioned concerning his bias in the presence of the remaining qualified jurors. OCGA § 15-12-164 (c) provides that "[i]f a juror answers any of the questions set out in subsection (a) of this Code section so as to render him incompetent or if he is found to be so by the judge, he shall be set aside for cause." And subsection (d) provides in part: "The court shall also excuse for cause any juror who from the totality of the juror's answers on voir dire is determined by the court to be substantially impaired in the juror's ability to be fair and impartial." There is no requirement that the juror be struck for cause immediately upon a negative answer to the question of whether he or she is perfectly impartial, and there is no requirement that the jury panel members be questioned outside of the presence of other panel members. See OCGA § 15-12-133 (provides right to individual examination of each prospective juror generally). Moreover, Maurer has not presented a proffer that any of the remaining jurors were somehow affected by the questioning of Juror #133 in their presence. See, e. g., *Daly v. State*, 285 Ga. App. 808, 813 (4) (e) (648 SE2d 90) (2007) (absent a proffer of expert testimony, defendant failed to establish a reasonable probability that outcome of trial would have

13

been different had counsel retained expert). He has therefore failed to meet his burden of demonstrating prejudice.

(b) Maurer complains that counsel should have objected to double hearsay through V. G.'s mother and triple hearsay through the detective as to what V. G. told B. G. and what B. G. told his mother about what occurred in the garage. But this evidence was cumulative of both the statements given by V. G. during her forensic interview and the acknowledgment during her testimony that she first told B. G. about the incident involving Maurer and that she told the forensic interviewer the truth. There therefore could be no harm in the admission of this evidence. See *Obeginski v. State*, 313 Ga. App. 567, 570 (2) (722 SE2d 162) (2012) (failure to object to evidence that was cumulative of evidence presented in forensic interview did not amount to ineffective assistance); *Williams v. State*, 304 Ga. App. 592, 595 (3) (696 SE2d 512) (2010) (hearsay harmless when statements are cumulative of other admissible evidence).

(c) Maurer argues that trial counsel failed to object to the State's improper impeachment of V. G.'s brother B. G. after B. G. repeatedly testified that he did not want to answer questions. The State questioned B. G. concerning statements he made to the prosecutor the Friday before trial. The State asked: "Last Friday at your house

14

do you remember telling me that [V. G.] had told you that the defendant made her grab his penis and demonstrated how he did it? Do you remember that?" B. G. responded, "I don't want to answer that, anything, no questions." But as explained above in Division 6 (b), this was cumulative of V. G.'s statements to the forensic interviewer and her acknowledgment that she told the interviewer the truth and told B. G. about the incident first.

(d) Maurer contends that trial counsel was ineffective "in preparing and conducting the trial." In particular, Maurer complains that counsel failed to interview the State's witnesses. Trial counsel testified that he did not interview the mother or V. G., but that he spoke briefly with B. G. He explained that his "understanding was the kids were going to take the stand and say they didn't want to testify," and that someone from his office interviewed V. G. and her brother and relayed to him "what their testimony may or may not be." Maurer has therefore failed to establish deficient performance on the part of his trial counsel. Moreover, Maurer has failed to show that there is a reasonable likelihood that the outcome of the trial would have been different had counsel interviewed these witnesses himself. See *Johnson v. State*, 287 Ga. 767, 770 (2) (700 SE2d 346) (2010) (defendant failed to show outcome of trial would have been different if witness had been interviewed); see *Hampton v. State*,

15

279 Ga. 625, 627-628 (4) (619 SE2d 616) (2005) (ineffective assistance claim failed where defendant did not make required proffer regarding the testimony of those he contended were not adequately interviewed).

(e) Maurer argues that trial counsel was ineffective in initiating a line of questioning that suggested Maurer was guilty of the charged offense. During cross-examination, trial counsel asked V. G.'s mother, "why do you believe [Maurer] wouldn't do this again?" The State objected to the question on the ground that it "calls for speculation and . . . goes to the ultimate issue." The trial court overruled the objection, and V. G.'s mother answered, "Because I know he's a good person. I know he had counseling. I know he had a lie detector test and I know he had a psycho-sexual test and he passed both. And I just know him. I know he's a really good person."

Trial counsel testified that he asked the question in order to elicit testimony from the mother "about the psychosexual and the polygraph and that [Maurer's] not a pedo[ph]ile. . . . Because they were favorable to him. Polygraphs don't come in period, but we were hoping she would reference the fact she did not believe he was a pedo[ph]ile, not only that she didn't believe it but there was empirical data that shows he's not a pedo[ph]ile." In light of counsel's stated strategy, "we must indulge

16

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *Contreras v. State*, 314 Ga. App. 825, 830 (3) (726 SE2d 107) (2012). See *Damerow v. State*, 310 Ga. App. 530, 538 (4) (a) (ii) (714 SE2d 82) (2011) (no showing that counsel's strategy of eliciting bolstering testimony to show inconsistency was unreasonable); *Colon v. State*, 275 Ga. App. 73, 82 (9) (619 SE2d 773) (2005) (full concurrence to Div. 9) (counsel's strategy to elicit testimony that witness believed victim to show victim's lack of credibility did not amount to ineffective assistance).

(f) Maurer complains that trial counsel failed to review with him his videotaped statement and V. G.'s forensic interview. Trial counsel testified that he did in fact review with Maurer his videotaped statement to police. And "[i]t is within the trial court's discretion to resolve conflicting testimony between trial counsel and a defendant at a hearing on motion for new trial." (Citations and punctuation omitted.) *Adkins v. State*, 280 Ga. 761, 762 (2) (a) (632 SE2d 650) (2006). Even though counsel stated that he and other attorneys in his office reviewed the forensic interview of V. G. at length to determine if an expert was needed for Maurer's defense, counsel was not asked and did not state whether he reviewed V. G.'s forensic interview with Maurer. We therefore must presume counsel was acting strategically. See *Jones v.*

17

*State*, 304 Ga. App. 109, 114 (2) (a) (695 SE2d 665) (2010). But even if counsel failed to do so, Maurer has not made any showing that there is a reasonable probability that the outcome of the trial would have been different had counsel reviewed the interview with him. See, e. g., *Coney v. State*, 316 Ga. App. 303, 308 (3) (e) (728 SE2d 899) (2012) (no showing of prejudice in counsel failure to review video until morning of trial); *Wheat v. State*, 282 Ga. App. 655, 657 (1) (c) (639 SE2d 578) (2006) (no showing that outcome of trial would have been different but for counsel's failure to have expert review victim's videotaped statement).

(g) Maurer claims that trial counsel was ineffective in relying on a "sole defense" which had no legal basis. Maurer was charged with having V. G. touch his penis "with the intent to arouse and satisfy the sexual desires of [Maurer] and the [victim]." Trial counsel argued against the court's giving the State's request to charge that where an indictment charges a crime in two ways and used the conjunctive "and," a defendant may be convicted by proof that he violated the statute in either way. Counsel informed the court that Maurer's defense would be that the State had failed to prove the act was done to satisfy both his sexual desires *and* V. G.'s.

Maurer complains that he essentially had no defense because trial counsel relied on a defense that "the law was run contrary to [ ] for over a hundred years."

18

Maurer is correct that our appellate courts have consistently held that "[i]f a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." (Citation and punctuation omitted.) *Wilson v. State*, 234 Ga. App. 375 (1) (506 SE2d 882) (1998). But trial counsel testified that he pursued this "and/or" defense because he had done so in another case and a jury acquitted his client on that basis. "Generally, counsel's decision as to which theory of defense to pursue is considered strategic and cannot serve as the basis for an ineffective assistance claim." (Citation, punctuation and footnote omitted.) *Jackson v. State*, 306 Ga. App. 33, 39 (2) (c) (701 SE2d 481) (2010). Counsel's reasoned explanation for his strategy here was not so unsound that no reasonable lawyer would have pursued it. *Butler v. State*, ___ Ga. ___ (3) n.8 (Case No. S12A2049; decided February 4, 2013). And while counsel stated that he had planned to pursue this defense in closing, he did not, presumably because the trial court planned to instruct the jury that an accused may be convicted by proof that he violated a statute in either of the two ways indicted. Rather, counsel argued at closing that the State simply did not prove its case. Maurer has failed to make a showing that counsel performed deficiently. Moreover, if we were to assume that counsel was

19

deficient, Maurer has not shown that there was some other viable defense that counsel should have presented. See, e. g., *Harris v. Upton*, ___ Ga. ___ (2) (d) (Case No. S12A1498; decided March 4, 2013) (defendant failed to show viable defense existed which counsel should have presented). He therefore has also failed to establish the prejudice prong of the *Strickland* test.

(h) Maurer asserts that trial counsel was ineffective in failing to object to the prosecutor's closing argument. Specifically, Maurer complains that the prosecutor's statement that "the [S]tate's evidence is not rebutted. It's not rebutted," shifted the burden of proof to the defense. But the Georgia Supreme Court has held that "[a] prosecutor may argue that the defendant has not rebutted or explained the State's evidence." *Arrington v. State*, 286 Ga. 335, 346 (16) (c) (687 SE2d 438) (2009).

Maurer also argues that the prosecutor vouched for the State's theory of the case by arguing facts not in evidence and by referring to his own personal beliefs about Maurer's guilt. The prosecutor stated: "And then when your witness gets called into court they're reluctant to tell what they had told before and you have to rely on different ways of trying to get the evidence in and you try your best to get the truth before the jury as you believe it to be and you present your case." While trial counsel was not asked about his failure to object to this particular statement, counsel testified

that he did not typically object to closing argument because it would "draw the jury's attention" to such statements. See, e. g., *Braithwaite v. State*, 275 Ga. 884, 885-886 (2) (b) (572 SE2d 612) (2002) (counsel not ineffective for strategically not objecting to improper closing argument). And, in any case, "a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses." (Citation and punctuation omitted.) *Scott v. State*, 290 Ga. 883, 885 (2) (752 SE2d 305) (2012). We will therefore not second-guess counsel's strategic decision not to object.

(i) Maurer contends that counsel was ineffective in failing to object at sentencing to certified copies of his prior convictions under an alias. But counsel testified at the hearing on the motion for new trial that he and Maurer had discussed the prior convictions and that he would have objected to them if he "had a good faith basis to believe that wasn't [Maurer]." Under these circumstances, trial counsel's decision not to object was not unreasonable and cannot provide a ground for ineffectiveness. See *Morrison v. State*, 278 Ga. 808, 809 (3) (607 SE2d 577) (2005) (no showing of ineffectiveness where counsel made strategic decision not to object

21

to admission of prior conviction where counsel had no basis upon which to contest its validity); *Lopez-Jimenez v. State*, 317 Ga. App. 868, 871-872 (2) (b) (733 SE2d 42) (2012).

*Judgment affirmed. Doyle, P. J. and Andrews, P. J., concur*.