### A03A1563. McMORRIS v. THE STATE.
(588 SE2d 817)

ANDREWS, Presiding Judge.

Charles Frank McMorris, Jr. (McMorris) appeals from the trial court's denial of his motion for new trial following his conviction by a jury of rape and aggravated sodomy, contending that trial counsel was ineffective; two evidentiary rulings by the trial court were incorrect; and the evidence was legally insufficient. For the reasons set out herein, we affirm.

1. We consider first the fourth enumeration of error regarding sufficiency of the evidence.

On appeal the evidence must be viewed in the light most favorable to support the verdict, and [McMorris] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in *Jackson* is the

proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.

(Citations and punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

Viewed with all inferences in favor of the jury's verdict, the evidence was that McMorris met the victim, S. H., at Centennial Olympic Park. S. H. was receiving Social Security disability payments following what she described as a nervous breakdown.[1] She had previously been hospitalized at Georgia Regional Hospital and had ceased taking her prescribed medication because it made her feel "like a mummy." When she met McMorris, she was living at the Salvation Army shelter.

McMorris and S. H. attended movies, shopped, and talked on the telephone and S. H. considered him a friend. In March 2001, S. H. went with McMorris to the personal care home run by his mother, Smith, where McMorris worked. S. H. obtained a job there cleaning, preparing meals for the home's five residents, and administering their medications. Although she initially continued living at the Salvation Army, S. H. eventually moved into Smith's personal care home. There, S. H. slept on a couch in the living room while McMorris also slept in the living room, either on a loveseat or a mattress on the floor. They never slept together. Although McMorris asked her to be his girlfriend, S. H. refused. S. H. told McMorris, "I told him no boyfriend or girlfriend, no boyfriend or girlfriend, just friends, no boyfriend and girlfriend."

On April 29, 2001, shortly after midnight, S. H. went to the bathroom before going to bed. When she came out, McMorris called her and told her there was a leak in another bathroom and he needed her help. This bathroom was located off of McMorris' parents' bedroom. His parents were in Alabama for the weekend and McMorris and S. H. were the only other people in the home with the five residents. McMorris followed S. H. into his parents' bedroom where S. H. discovered there was no leak. When she said this, McMorris shut the bedroom door, said he loved her, and pushed her onto the bed. He then covered her mouth with his hand, told her not to scream, and removed her pants and underwear.

At that point, McMorris attempted to have intercourse with S. H., but put his penis in her anus, and she told him it was burning.

---

[1] Outside the jury's presence, the State advised the court that S. H. was a paranoid schizophrenic and that it would become obvious that she was mentally ill.

Then McMorris licked her breast and vagina and then "he put it in. He put his — he put his down there in me, his penis inside me." All during this, S. H. was telling McMorris not to do it, but McMorris kept saying he was going to take care of her and he loved her. McMorris finally fell asleep on top of her and S. H. got away.

In the morning, S. H. called Mrs. Hill, who owned the personal care home. Hill asked for Smith's number in Alabama and then she and her husband came to help S. H., who had also called police. The Hills said they were close friends of Mrs. Smith, who was a registered nurse. Mrs. Hill said S. H. called her around 7:00 a.m. on April 29 and said she had been raped. Mrs. Hill asked who it was, but S. H. did not answer. Mrs. Hill then asked if the man were still there and if it were McMorris. S. H. answered affirmatively. Mrs. Hill then called Mrs. Smith in Birmingham and the Hills went to S. H. When they arrived, Mr. Hill found S. H. sitting at a table "kind of in a fetal position" and shaking. When he asked her what happened, she said either that she had been raped or violated. Mr. Hill then asked McMorris if she had given consent and he said no, but said "I didn't think she really meant no." Mr. Hill described McMorris as "slow."

When police arrived, S. H. also told them she had been raped. McMorris also told police that he pushed her onto the bed and she screamed when he did so. He admitted putting his hand over her mouth, removing her clothing, and attempting to penetrate her vagina. McMorris also told one of the officers that "you know how women will have sex but they still say no. I guess she didn't really want it."

S. H. was examined by Stearns, a physician's assistant, that morning. Stearns had extensive training in sexual assault examinations and trained doctors, physicians assistants, and nurses in the exam techniques. When she examined S. H., she found her fearful, trembling, and tearful. S. H. told Stearns there had been vaginal penetration and attempts at anal penetration. She was unsure if anal penetration occurred, but painful attempts were made.

Using a colposcope, an instrument described as binoculars attached to an intense light source, Stearns conducted vaginal and anal exams. While the vaginal exam was unremarkable, in examining the anal area, Stearns found "edema or swelling and some redness and some bruising" which was abnormal. In Stearns' opinion, the bruising was two to eight hours old. She could see the bruising with the naked eye, but used the colposcope, which was hooked to a monitor, so she could print any abnormal findings.

The evidence was legally sufficient. *Jackson v. Virginia*, supra; *Johnson v. State*, 245 Ga. App. 690, 691 (1) (538 SE2d 766) (2000).

2. McMorris contends that his trial counsel was ineffective because he failed to request a continuance or ask the trial court to

disallow State's Exhibit 3, a printout from the colposcope; was not adequately prepared for trial; and failed to notify McMorris prior to trial that he had been reindicted and the charge of aggravated sodomy added to the rape charge so that he could make an informed decision whether to proceed to trial "and risk being sentenced to life without parole."

> To establish ineffectiveness, a defendant must prove that trial counsel's performance was deficient and but for the deficiency a reasonable probability existed that the result of the trial would have been different. An error by counsel, even if professionally unreasonable, does not warrant reversal of a criminal conviction if it had no effect on the judgment.

(Citation omitted.) *Mathis v. State*, 238 Ga. App. 218, 221-222 (6) (517 SE2d 578) (1999). The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. *Smith v. State*, 256 Ga. 483 (351 SE2d 641) (1986).

(a) State's Exhibit 3 was a printout made by Stearns from the colposcope and showed S. H.'s anal bruising.

Prior to Stearns' testimony, the prosecutor advised the court that she had just received the picture which showed the injury to S. H.'s anus. Trial counsel objected to its admission on the ground that he had not received the ten days notice of the picture required by OCGA § 17-16-4 (a) (3). There was no dispute that the State had an open file policy and that defense counsel had been provided with a copy of Stearns' report of her examination which mentioned the picture and the injury to S. H. The day of trial was also the first time the prosecutor had seen the picture. The trial court ruled that the picture was newly discovered and allowed defense counsel to interview Stearns before she testified. Defense counsel requested that he be allowed to recall S. H. for further cross-examination based on the picture, but the trial court declined, finding that the picture was a matter of expert testimony. Defense counsel then interviewed Stearns during a 13-minute recess before her testimony.

At the motion for new trial hearing, trial counsel stated that, had he needed additional time to interview Stearns, he believed the court would have allowed it. His main purpose in interviewing Stearns was to assure that she would not testify that the damage was the result of rape and she did not.

The trial court did not err in admitting the colposcope picture because of the State's failure to produce it ten days before trial under OCGA § 17-16-4 (a) (3). "[I]f the State fails to comply with a defend-

ant's discovery request, then the court may order the [S]tate to permit the discovery or inspection, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from introducing the evidence not disclosed." (Punctuation omitted.) *Brown v. State*, 236 Ga. App. 478, 481 (3) (512 SE2d 369) (1999). Here, although he had not seen the picture before trial, McMorris' counsel was not surprised by the picture because he had had access to the report reflecting its contents. Nor did McMorris present any evidence of bad faith on the part of the State. Further, the picture was cumulative of the testimony of Stearns, who saw the injuries with her naked eye as well as through the colposcope and that of S. H. who testified regarding McMorris' hurting her anus. *Davis v. State*, 257 Ga. App. 500, 502-503 (2) (571 SE2d 497) (2002); see *Caldwell v. State*, 263 Ga. 560, 564 (12) (436 SE2d 488) (1993), citing *Jefferson v. State*, 206 Ga. App. 544, 548 (5) (425 SE2d 915) (1992) (views of the extent of the injuries sustained by victim of alleged aggravated assault relevant at the trial of defendant notwithstanding claims that these might inflame or prejudice the jury).

McMorris, having produced no evidence of prejudice to him from the admission of this picture or bad faith on the part of the State in not producing it ten days prior to trial, was not entitled to the harsh sanction of excluding evidence improperly withheld from the defense, OCGA § 17-16-6. *Davis v. State*, supra. No abuse of discretion in the trial court's conclusion that defense counsel's actions regarding the admission of the picture were not ineffective has been shown. Id.

Also, decisions as to whether to interpose certain motions, including for a continuance, fall within the realm of trial tactics and strategy and usually provide no basis for reversal of a conviction. *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998). "Counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel. [Cits.]" *Scott v. State*, 238 Ga. App. 258, 260 (2) (518 SE2d 468) (1999).

Here, there was no showing of the need for any continuance or any prejudice arising from trial counsel's failure to seek one.

It is also argued that trial counsel did not interview Stearns before trial and failed to call an expert witness to counter her testimony and the picture. As set out above, trial counsel had Stearns' report and did interview her during trial prior to her testimony. Also, there was no showing at the motion for new trial that another expert would have provided any evidence which would have either contradicted Stearns' testimony or been favorable to McMorris. *Lockwood v. State*, 259 Ga. App. 350, 351-352 (2) (577 SE2d 50) (2003).

(b) McMorris also argues that trial counsel was inadequately prepared for trial, based on the same alleged failures discussed in subdivision (a). In addition to the facts set out above, trial counsel, a

public defender with over 17 years of experience including hundreds of jury trials, consulted with McMorris before and during trial, represented McMorris at the preliminary hearing and cross-examined the police witnesses, and had an investigator who assisted him by interviewing Mr. and Mrs. Hill and Mrs. Smith.

The trial court's conclusion that trial counsel was adequately prepared for trial is supported by the record and McMorris has failed to show that the outcome of the trial would have been any different but for failure of adequate pretrial consultation with him. *Washington v. State*, 274 Ga. 428, 430 (2) (554 SE2d 173) (2001); see *Concepcion v. State*, 205 Ga. App. 138, 139 (421 SE2d 554) (1992).

(c) McMorris also alleges that trial counsel was ineffective because he failed to adequately notify him prior to the day of trial that his case had been reindicted, adding the aggravated sodomy charge to the original rape charge and, as a result, he did not have an opportunity to make a rational informed decision whether to go to trial and risk being sentenced to life without parole.

Although it is argued that the addition of the aggravated sodomy charge raised the prospect of life without parole for McMorris, that is not the case. Because he had a prior rape conviction, he was facing a mandatory life without parole sentence upon conviction of rape in this case, regardless of the added aggravated sodomy charge. OCGA §§ 17-10-7 (b); 17-10-6.1 (a) (4).

Also, trial counsel testified at the motion for new trial hearing that, based on his review of Stearns' report, he had anticipated the reindictment and that he had so advised McMorris. Further, he discussed with McMorris before trial the State's plea offer, which was a sentence of 15 years on a reduced charge of aggravated assault with intent to rape, and that, because of his age, McMorris considered a 15-year sentence the same as a life sentence and rejected the plea offer.

The trial court, before impaneling the jury, also asked McMorris if, in light of the fact that he faced life without parole if convicted because of his prior rape conviction, he still wanted to go forward with his trial. McMorris answered that he understood this and wanted to proceed with his trial.

Neither ineffectiveness nor prejudice has been shown in this regard by McMorris.

3. In his second enumeration of error, McMorris argues that he is entitled to a reversal of his conviction based on the trial court's refusal to allow S. H. to be recalled after introduction of the colposcope picture.

As discussed supra, the picture was cumulative of other evidence and the fact that S. H. had injuries was already known, and she was subjected to a thorough cross-examination by trial counsel.

The trial court has broad discretion regarding recall of witnesses or reopening evidence and no abuse of that discretion has been shown by McMorris. *Evans v. State*, 275 Ga. 541, 542 (3) (570 SE2d 331) (2002); see *Watkins v. State*, 253 Ga. App. 382, 384 (1) (559 SE2d 133) (2002).

4. The third enumeration, that the trial court erred in admitting the colposcope picture, has been fully discussed above. There was no error.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED OCTOBER 15, 2003.

*Sharon Smith-Knox*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.