## S06A1541. LAWTON v. THE STATE.
### (640 SE2d 14)

HINES, Justice.

Following the denial of a motion for new trial, John Vincson Lawton, Jr., appeals his convictions for malice murder and possession of a firearm by a convicted felon during the commission of a crime[1] in connection with the fatal shooting of Marcus Taylor. He challenges the limitation of cross-examination of a witness, an in-court identification, the failure to grant a mistrial following alleged juror mis-

---

[1] Lawton was charged under and convicted of OCGA § 16-11-133 (b) which provides:
Any person who has previously been convicted of or who has previously entered a guilty plea to the offense of murder, armed robbery, kidnapping, rape, aggravated child molestation, aggravated sodomy, aggravated sexual battery, or any felony involving the use or possession of a firearm and who shall have on or within arm's reach of his or her person a firearm during the commission of, or the attempt to commit:
    (1) Any crime against or involving the person of another;
    (2) The unlawful entry into a building or vehicle;
    (3) A theft from a building or theft of a vehicle;
    (4) Any crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance as provided in Code Section 16-13-30; or
    (5) Any crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31,
and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of 15 years, such sentence to run consecutively to any other sentence which the person has received.

conduct, and the sufficiency of the evidence. Finding the challenges to be without merit, we affirm.[2]

The evidence construed in favor of the verdicts showed that Marcus Taylor was shot and killed in a well-lit Citgo store parking lot on August 11, 2002. Ronnie Andrews saw Lawton peeking around the corner of the store before Lawton bumped into Andrews on his way to where Taylor was standing. Lawton shot Taylor once in the back of the head, then stood over Taylor's body and shot him three more times. Other witnesses testified as to the shooter's appearance and clothing.

Taylor had testified against Lawton's co-defendant Lindsey in two trials for a drive-by shooting in which 83-year-old Rosa Barnes was killed. Lindsey was eventually acquitted of the shooting, but Taylor thought that Lindsey was determined to harm him. Co-defendant Hankerson testified that efforts to arrange Taylor's death began in 1997 while Lindsey was incarcerated pending the outcome of the Barnes prosecution. Although he was a friend of Taylor's, Hankerson became involved in the plot. He confirmed that Lindsey had paid Lawton $500 plus one ounce of crack cocaine to shoot Taylor. Investigators found Lawton's Dodge Intrepid parked at Hankerson's house the day after the murder. Inside the car was a jogging suit similar to that which several witnesses described as having been worn by the shooter. Hankerson identified the jacket as Lawton's. Lawton admitted that he had been at Hankerson's house the night of the murder.

Corey Bailey was incarcerated in the Richmond County Jail when he contacted investigators on August 15, 2002. Bailey reported that he had overheard Lawton telling another inmate that Lindsey had hired Lawton to kill Taylor.

1. Lawton contends that the trial court erred when it limited his cross-examination of Bailey by refusing to let him question Bailey about Bailey receiving a benefit after informing police that he overheard a jailhouse conversation in an unrelated murder case in order

---

[2] The crimes occurred on August 11, 2002. On August 20, 2002, a Richmond County grand jury indicted Lawton, along with Charles Hernell Hankerson, Lorenzo Dexter Lindsey, and William Rodriquez Abrams, for the malice murder of Marcus Taylor. Lawton was additionally indicted for possession of a firearm by a convicted felon during the commission of a crime under OCGA § 16-11-133 (b); Lindsey was also charged with criminal solicitation to commit murder. Hankerson pled guilty to a lesser offense, and an order of nolle prosequi was entered on the charge against Abrams. Lawton and Lindsey were tried jointly before a jury December 15-19, 2003, and each was found guilty of the indicted charges. By final disposition signed January 21, 2004, and filed of record on January 29, 2004, Lawton was sentenced as a recidivist to life without parole for the malice murder and a consecutive 15 years in prison for the firearm possession charge. A motion for new trial was filed on January 28, 2004, and the motion was denied on April 11, 2006. A notice of appeal was filed on April 21, 2006, and the case was docketed in this Court on May 16, 2006. The appeal was submitted for decision on September 18, 2006.

to show that Bailey knew that he could profit by relating to police alleged inculpatory statements by Lawton, i.e., that such evidence would call into question Bailey's veracity by revealing a self-serving motive. But the contention is wholly unavailing.

A defendant has the right to a thorough and sifting cross-examination, but the trial court has broad discretion to determine its scope and whether the sought testimony is relevant, and such discretion will not be disturbed on appeal unless it has been abused. OCGA § 24-9-64; *Buttram v. State*, 280 Ga. 595, 598 (10) (631 SE2d 642) (2006); *Rowe v. State*, 276 Ga. 800, 804 (3) (582 SE2d 119) (2003). And certainly the defense is entitled to a reasonable cross-examination on the question of whether the witness held a belief that he would receive a personal benefit from testifying favorably for the prosecution. *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002). That is not to say, however, that there are no limits on the cross-examiner's inquiry into the potential bias of an adverse witness; on the contrary, a trial court retains wide latitude to impose reasonable limits on such cross-examination, especially in the situation in which the interrogation may be only marginally relevant. *Brown v. State*, 276 Ga. 192, 194 (3) (576 SE2d 870) (2003).

The record suggests that Bailey's relating to police of jailhouse admissions in an unrelated murder case occurred at the same time that he reported Lawton's inculpatory statements. Therefore, the timing itself belies the argument that Bailey was motivated to lie about Lawton's admissions based on past benefit from relating such statements. But more significantly, even though the trial court expressed reservation on the basis of relevance about the defense exploring any statement by Bailey regarding the unrelated murder prosecution, the record reveals that, Lawton did, in fact, cross-examine Bailey about such statement, that Bailey acknowledged it, and that Lawton questioned Bailey in great detail about any benefit he might have received.[3]

---

[3] The cross-examination by Lawton's counsel included the following:
COUNSEL: So, Mr. Bailey, without having to re-plow around where we've already plowed, you were sitting in jail, and there were charges over your head for armed robbery, car jacking, and a drug charge; is that right?
BAILEY: It wasn't no drug charge. It wasn't no drug charge.
COUNSEL: It wasn't no drug charge.
BAILEY: Robbery by snatch, sudden snatch.
COUNSEL: I'm sorry.
BAILEY: I took a plea bargain to – I took a plea bargain to possession of cocaine from a robbery by sudden snatch. They dropped the armed robbery charge because – hijacking charge because they didn't have enough evidence to pin me on that before

2. Lawton next contends that the trial court erred when it allowed Andrews to take the witness stand a second time and make an in-court identification of him as the shooter after Andrews had already been dismissed as a witness because, by that time, Andrews's testimony was tainted by his having seen Lawton in the courtroom.

Andrews first testified and described the shooter, inter alia, as "dark-skinned";[4] he was not asked to identify Lawton. After leaving the stand and during a break in the trial, Andrews told an investigator with the District Attorney's office that while on the stand, he had mistakenly testified that the shooter had a dark rather than light complexion, and Lawton was indeed the man that did the shooting. During a proffer to the trial court, Andrews explained that he had made mistakes in his testimony by answering questions too quickly. He realized his mistakes because he thought about them afterwards and not because he had seen Lawton at the defense table. The State was permitted to recall Andrews and he positively identified Lawton.

A trial court has broad discretion to allow the State to recall its witness for further direct testimony, and no abuse of that discretion has been shown in this case. *Ivey v. State*, 277 Ga. 875, 877 (4) (a) (596 SE2d 612) (2004). As to the claim that Andrews's in-court identification of Lawton was tainted by his viewing of Lawton during his initial testimony, the identification is subject to the same rules of evidence, witness credibility determination, and cross-examination as affects all testimony in the trial. Id. at 877 (4) (b). The defense conducted a thorough cross-examination of Andrews in an attempt to discredit his identification of Lawton. Moreover, the jury was aware that Andrews had the opportunity to see Lawton in the courtroom and could consider this fact when determining how much credibility to give Andrews's testimony. Id.

3. Lawton also contends that the trial court erred in not granting a mistrial sua sponte because of the misconduct of a juror. But the circumstances of this case did not warrant a mistrial.

During deliberations, juror Lewallen informed a bailiff that he had seen Lawton prior to the start of the trial (apparently while

---

I even made the statement against [defendant in unrelated murder case] or Lawton.

COUNSEL: After you conveyed to the police and to the D.A.'s Office what you claimed to have overheard – you actually claimed to have overheard two separate conversations.

BAILEY: No. One statement was told to me. The other statement I heard. I overheard that one.

COUNSEL: You claim to have overheard Mr. Lawton –

BAILEY: I heard him.

[4] Andrews stated that the man was "tall, dark-skinned, clean shaven head. He wore a black warm-up suit sort of. It was either gold or yellow trimming."

Lawton was in jail), had viewed Lawton's tattoo, and had made inquiries about it; Lawton told him it was an "assassin tattoo" and how many times he had been hired as an assassin. Lewallen expressed fear and concern for his safety to the bailiff. Lewallen was placed in a room by himself while the trial court, in the presence of counsel, questioned the bailiff about what had transpired. Lawton's attorney requested that Lewallen be removed from the jury, and co-defendant's counsel joined in the request. Lewallen was removed and replaced with an alternate juror. Neither Lawton nor his co-defendant requested a mistrial. The jury was returned to the courtroom and informed by the trial court that Lewallen was being taken off the jury for "legal reasons," and that deliberations would start with one of the alternate jurors. Again, there was no complaint about the trial court's actions in this regard or a request for an additional remedy.

In the absence of any request for a mistrial, the trial court was required to act sua sponte only if there was a manifest necessity for a mistrial. *Wright v. State*, 276 Ga. 419, 420 (2) (577 SE2d 782) (2003). Lawton claims that a mistrial was required because Lewallen's conversation with the bailiff was in front of other jury members and Lewallen was "ranting and raving" so that he had to be taken from the jury room. However, contrary to such claims, there is no evidence that other jurors heard the substance of the exchange or had any idea about what may have been upsetting Lewallen. Consequently, the circumstances fall far short of demonstrating the manifest necessity for a mistrial. Id.

4. Finally, Lawton maintains that there was insufficient evidence as a matter of law to support his convictions because the credibility of the witnesses who identified him, as well as the identifications themselves, were suspect. But, Lawton has failed to show any legal infirmity in witness identifications of him as the shooter. See Division 2, supra. Furthermore, it is the role of the jury, and not this Court, to resolve evidence conflicts and inconsistencies and to assess witness credibility. *Major v. State*, 280 Ga. 746 (632 SE2d 661) (2006). The evidence was sufficient to enable a rational trier of fact to find Lawton guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2007.

*Garrett & Gilliard, Michael C. Garrett*, for appellant.

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.