296 Ga. 371
FINAL COPY


S14A1293.  FUNCK v. THE STATE.


HINES, Presiding Justice.

Following the denial of his motion for new trial, as amended, Marcus Funck appeals his conviction for felony murder while in the commission of criminal attempt to possess cocaine in connection with the death of Charles Johnson.  Funck complains of a ruling regarding the cross-examination of his co-indictee, that he was allegedly required to wear prison garb at his trial, and that his trial counsel was ineffective.  Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdict showed the following.  On August 18, 2006, Funck and his girlfriend, Morse, borrowed a van from a friend, Paz-Sanchez.  They wanted to obtain crack cocaine, and planned to get the

_____

[1] The murder and underlying felony occurred on August 18, 2006.  On December 5, 2006, a Richmond County grand jury returned an indictment against Funck and Lisa Moody Morse, charging them with the felony murder of Charles Johnson while in the commission of criminal attempt to possess cocaine by fatally striking Johnson with a vehicle.  Funck was tried alone before a jury November 13-15, 2007, and found guilty of the felony murder; he was sentenced to life in prison on November 15, 2007.  A motion for new trial was filed on November 16, 2007, amended on December 7, 2012, and denied on July 9, 2013.  A notice of appeal was filed on August 6, 2013, and the case was docketed in this Court's  September 2014 term.  The appeal was submitted for decision on the briefs.

money to purchase it by selling a stolen remote control to a drug dealer. Unsuccessful in selling or pawning the stolen item, and having no money to purchase the drugs, the pair decided they would find someone who would sell them cocaine and after receiving the drugs drive off without paying. They had previously used this method to obtain drugs.

Morse and Funck spied Johnson walking downtown and asked him where they could purchase crack cocaine, telling him that they wanted to purchase $50 worth. Johnson went to get the drugs while Funck and Morse waited in the van. Five or ten minutes later, Johnson returned to the van, which was running, and handed Funck the drugs. Funck then twice ordered Morse, who was driving, "to go, go." As Morse started driving away, Johnson hung onto the side of the van. Funck then kicked Johnson off the side of the van by putting his feet through the open van window. Morse heard and then felt a "thump"; fearing that she might have hit a person, she muttered, "[O]h God" and started to slow down the van. But Funck assured her that Johnson was okay and told her to drive on, which she did.

Morse and Funck washed the van and returned it to Paz-Sanchez. Morse told Paz-Sanchez that they had obtained crack cocaine and that Funck had

punched a man that tried to jump on the side of the van.

At the time of the fatal impact, a long-time resident of Johnson's neighborhood who knew Johnson heard "hollering" and went to investigate. This man saw Johnson's shoe in the middle of the street and then saw Johnson himself lying in the street. He saw that Johnson was not breathing and called for an ambulance. Johnson was dead at the scene. There was a drag mark from the sole of the shoe leading up to the lone shoe in the road and then another drag mark going from the shoe to Johnson's body.

Later that night, Morse heard on the news that there had been a fatality, and once she realized that Johnson had died, she expressed her fear and concern to Funck, and he responded, "[T]hat's just one less n _ _ _ _ _." Morse wanted to turn herself in to the police, but Funck told her not to. Funck told a friend about what had happened, saying that after they got the crack cocaine and "ripped [Johnson] off," Johnson jumped on the van and Funck and Morse "took off," and when they "got to a certain speed," i.e., about 40 miles per hour, Funck "threw [Johnson] off" and "he went up under the [van]."

Johnson died as the result of multiple blunt force trauma to his head, neck, and anterior torso.

3

1. Funck contends that his conviction should be reversed because his trial counsel was "per se" ineffective for failing to timely file a valid demurrer to the indictment, i.e., within ten days of arraignment,[2] in that the felony murder charge is based upon the charge of criminal attempt to possess cocaine, which is not inherently dangerous or life-threatening so as to be a valid underlying felony as a matter of law and under the circumstances of this case.

In order for Funck to prevail on his claim of the ineffectiveness of his trial counsel, he has to demonstrate, under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that his counsel's performance was deficient and that, but for such deficiency, there is a reasonable probability of a more favorable outcome at trial. *Allen v. State*, 293 Ga. 626, 627 (2) (748 SE2d 881) (2013). To satisfy the first prong of *Strickland*, Funck has to overcome the strong presumption that his trial counsel's performance was within the broad range of reasonable professional conduct; the reasonableness of such conduct is assessed from counsel's perspective at the time of trial and under the particular circumstances then existing in the case. Id. The second prong of

---

[2]Funck cites OCGA§ 17-7-110, which provides: "All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."

*Strickland* requires that Funck demonstrate the reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. Funck cannot meet his burden under *Strickland*.

On the final day of trial, Funck's counsel did in fact move the court for what counsel termed a "special demurrer" to the indictment and for a directed verdict of acquittal, arguing that the underlying felony of criminal attempt to possess cocaine was "not dangerous per se" or inherently dangerous under the evidence at trial. However, the indictment plainly and with specificity charged the offense of felony murder while in the commission of the felony of criminal attempt to possess cocaine as the proximate cause of Johnson's death.[3] The criminal attempt to possess cocaine can be used as the underlying felony for a felony murder conviction. *Chance v. State*, 291 Ga. 241 (728 SE2d 635) (2012). Therefore, the felony murder charge was not subject to either a pretrial general or special demurrer. See *State v. Wyatt*, 295 Ga. 257 (759 SE2d 500) (2014). Indeed,

the only limitation on the type of felony that may serve as an

---

[3]The indictment charged that Funck "did while in the commission of the felony of Criminal Attempt to Possess Cocaine, cause the death of Charles Johnson, a human being, by striking him with a vehicle . . . ."

underlying felony for a felony murder conviction is that the felony must be inherently dangerous to human life. For a felony to be considered inherently dangerous, it must be dangerous per se or it must by its circumstances create a foreseeable risk of death. In determining whether a felony meets that definition, this Court does not consider the elements of the felony in the abstract, but instead considers the circumstances under which the felony was committed.

*Chance v. State* at 242. (Citation and punctuation omitted.) The circumstances of this case well illustrate the validity of a charge of felony murder premised upon the criminal attempt to possess cocaine. Funck and Morse's plan to obtain cocaine by robbing the supplier of the drugs, and such plan going awry, was the proximate cause of Johnson's death. Therefore, the committed felony of criminal attempt to possess cocaine directly and materially contributed to the subsequent immediate cause of the death. *Davis v. State*, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012). Furthermore, the plan to rob an individual dealing in illegal drugs carried with it a foreseeable risk of danger and death. Id.

Thus, even a timely pretrial demurrer to the indictment on the basis urged would not have been successful. The failure to make a meritless motion cannot provide the basis upon which to find ineffective assistance of counsel. *Hampton v. State,* 295 Ga. 665 (763 SE2d 467) (2014). Consequently, Funck's claim of

6

his trial counsel being ineffective in this regard cannot prevail.

2. As to the evidence at trial, it was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Funck was guilty of the felony murder of Johnson. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

3. Funck next claims error in a ruling by the trial court allegedly limiting his attorney's ability to cross-examine Morse, who testified as a State's witness, about any deals she may have reached with the State. But, the complaint is unavailing.

Immediately before trial, there was a hearing on several defense motions. At this hearing, Funck's counsel argued that because certain language regarding the waiver of sentence modification, new trial, and the right to appeal had been crossed out in Morse's plea sentencing sheet, counsel suspected that there was an agreement with Morse that in exchange for her testimony against Funck, Morse's sentence might be modified or her plea agreement be "remolded." The prosecutor responded that there was no agreement as to any "remold," and that the plea agreement was for a 20-year sentence for manslaughter. The agreement also required Morse to testify at Funck's trial. The prosecutor then orally

"move[d] in limine" that defense counsel not be allowed to "go into anything speculative," i.e., without a factual basis, regarding any additional benefit anticipated by Morse. However, the trial court denied the State's motion in limine "as to the cross-examination regarding [Morse's] motivation, incentive for any deal that might be there," but that "it's not without limitation . . . [a]nd if you get into it and she says this is all it was you know a reasonable amount of follow up is probably appropriate but we're not going to belabor that point. . . ."

On direct examination, Morse testified that she entered a guilty plea to manslaughter and was sentenced to 20 years, and that before the plea she did not know what her sentence was going to be. On cross-examination Morse was asked if she had discussed with her attorney about her coming back to court for possible sentence reconsideration after she testified and she stated that there was such discussion between her and her attorney and that it was her intention to return to court to have her sentence reduced.

Thus, Funck was permitted to question Morse about her plea deal and any benefit she expected to receive in exchange for her testimony. Indeed, he has not pointed to any specific information about which he was prevented from

8

asking; nor has he alleged what specifics about Morse's motivation for testifying were not revealed as a result of her direct and cross-examination testimony.

Indeed, a defendant has the right to a thorough and sifting cross-examination, but the discretion of the trial court to determine its scope and the relevancy of the sought testimony is broad; the court's discretion will not be disturbed on appeal unless it has been abused. *Lawton v. State*, 281 Ga. 459, 461 (1) (640 SE2d 14) (2007). Certainly, a defendant is entitled to a reasonable cross-examination on the question of whether the witness believes that he or she would receive a personal benefit from testifying favorably for the State. Id. Even so, there are limits on the cross-examiner's inquiry into the potential bias of an adverse witness; a trial court retains wide latitude in imposing reasonable limits on such cross-examination. Id. But, in this case, the trial court's ruling did not, in actuality, limit Funck's cross-examination of Morse about what benefit she did receive and hoped to receive following her testimony for the State. Even if any limitation imposed by the trial court's ruling was deemed error, Funck has failed to show that he was harmed by the court's action. *Junior*

*v. State*, 282 Ga. 689, 692 (3) (653 SE2d 481) (2007).

4. Finally, Funck contends that his conviction should be reversed because he was *required* to wear his jail jumpsuit throughout his trial, and there was no justification, disciplinary or otherwise, for doing so. But, the trial court did not require it; Funck chose to do so on the advice of his attorney.

At the motion-for-new-trial hearing, Funck testified that his trial counsel told him to wear the jail jumpsuit because "she wanted everybody to know [he] had been incarcerated and was still incarcerated," and that he followed the advice. Trial counsel provided an affidavit stating that by the time of trial, Funck had been in jail for over a year, and that after discussion with Funck, the two decided that as part of their trial strategy, they wanted Funck to remain in his jail clothing for trial rather than change to "street clothes" so that the jury would be aware of the time that he had already served in confinement.

Thus, there was evidence that Funck was not only aware of the strategy prior to trial but took part in developing it. And, then he chose to pursue that strategic decision at trial. See *Townes v. State*, 298 Ga. App. 185, 187 (679 SE2d 772) (2009). A criminal defendant may waive the procedural right to wear

10

civilian clothing during trial. *Choi v. State*, 269 Ga. 376, 377 (4) (497 SE2d 563) (1998); *Gay v. State*, 258 Ga. App. 854, 857-858 (4) (b) (575 SE2d 740) (2002). As Funck chose to wear prison garb, there was no objection at trial, and inasmuch as there was no objection, the trial court was not given the opportunity to rule on this issue, and take any action. See, e.g., *McClarin v. State*, 289 Ga. 180, 183 (3) (b) (710 SE2d 120) (2011).

Insofar as Funck's argument raises the specter of a claim of ineffective assistance of trial counsel, he has failed to satisfy the requirements of *Strickland*. Given the strength of the evidence against him, Funck cannot show a reasonable probability that but for the alleged error of counsel, the outcome of his trial would have been different. See *Johnson v. State*, 243 Ga. App. 891, 893 (2) (534 SE2d 563) (2000).

Funck has failed to provide any basis for reversal of his conviction.

Judgments affirmed. All the Justices concur.

Decided January 20, 2015.

Murder. Richmond Superior Court. Before Judge Annis.

11

Gabriel T. Cliett, for appellant.

Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Samuel S. Olens, Attorney General, Particia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General, for appellee.