**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 5, 2017**

# In the Court of Appeals of Georgia

A17A0615. MORRIS v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted David Morris on one count each of aggravated child molestation, child molestation, and aggravated sexual battery. Morris now appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in (1) granting the State's motion in limine to prohibit cross-examination of the victim's father as to whether he suffered sexual abuse as a child, (2) failing to limit two witnesses' child-hearsay testimony to the specific facts to which the victim testified at trial, and (3) admitting into evidence a drawing made by the victim during a counseling session that the State did not produce during discovery. For the reasons set forth *infra*, we affirm Morris's convictions.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2012, Morris was living in Senoia, Coweta County, Georgia, with his wife, Jennifer, his daughter from a previous relationship, and Jennifer's two children from a previous relationship, nine-year-old B. A. and her younger brother, H. A. On February 10, 2012, a friend of Jennifer's was babysitting B. A. and H. A. after they arrived home from school, and at some point that afternoon, the children began fighting. Consequently, the babysitter contacted Jennifer and Morris, and both told her to send B. A. and H. A. to their bedrooms. The children complied, but after a few minutes, H. A. walked into B. A.'s bedroom and the two began talking. During this conversation, B. A. confided to her brother that Morris had been touching her private parts. With B. A.'s permission, her brother told the babysitter about the sexual abuse, and when the babysitter asked B. A. if this was true, she confirmed it.

Immediately thereafter, the babysitter called Jennifer, who rushed home and began questioning B. A. about her allegations. Initially, B. A. denied that Morris had sexually abused her, but ultimately, she told her mother that what she had relayed to her brother and the babysitter was true. Although visibly upset, Jennifer told B. A. not to tell her father about the sexual abuse, when she and her brother went to her father's

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

2

house later that day for their weekend visitation. The babysitter then drove the two children to the Pike County Sheriff's Office, as required by a court-ordered custody settlement, where their father and his girlfriend were waiting for them. At this time, neither the babysitter nor Jennifer informed law enforcement about B. A.'s outcry.

That same night, H. A. told his father about the sexual abuse B. A. had disclosed to him earlier in the afternoon. The children's father then asked B. A. if what her brother had told him was true, and although B. A. initially denied it, she eventually admitted to her father that Morris had, in fact, touched her privates. Immediately, the father called local law enforcement. And while he was reporting the incident to the authorities, B. A. recounted details of Morris's abuse to the father's girlfriend and also claimed that her mother warned her that if she told anyone else about her allegations, Morris would go to jail and her stepsister would have to move back to Texas.

The following day, a detective with the Senoia Police Department began an investigation of B. A.'s allegations and arranged for the child to be interviewed by a forensic social worker a few days later. During that interview, B. A. disclosed only one incident, in which Morris sexually abused her by placing his hand on her privates, and she claimed that this incident occurred when they lived in Pike County prior to

3

moving to Senoia. Later, the investigating detective also interviewed B. A., but believing that the incidents of sexual abuse occurred in Pike County (rather than Coweta County), he closed his investigation after less than one month.

Despite the fact that law-enforcement authorities had closed their investigation of her allegations against Morris, B. A. began attending regular counseling sessions with a family therapist. And over the course of the next several months during those sessions, B. A. disclosed that Morris had sexually abused her on multiple occasions when the family lived in Pike County and after they had moved to Senoia (located in Coweta County). Specifically, B. A. described multiple incidents in which Morris entered her bedroom late at night and then either put his fingers inside her privates and bottom, put his mouth on her breasts and her privates, or put his penis in her mouth. During one of these therapy sessions, B. A. drew a picture and described it to the therapist as depicting her crying while Morris was putting his penis in her mouth.

In July 2012, B. A.'s father showed the notes from the child's therapy sessions to the Senoia detective, and, as a result, the detective reopened his investigation. As part of the investigation, the detective arranged for B. A. to be interviewed by a licensed psychologist, who had significant experience in conducting forensic interviews of child sexual abuse victims. During those two September 2012

4

interviews, B. A. recounted many of the same details that she had disclosed to the family therapist regarding Morris's sexual abuse of her, including the allegations that, on multiple occasions, Morris placed his fingers inside her privates and buttocks and put his penis in her mouth. Following these sessions, the psychologist diagnosed B. A. as suffering from post-traumatic stress disorder and opined that her disclosures were consistent with a child who had been sexually abused.

Shortly thereafter, the detective arrested Morris, and ultimately, the State charged him, via indictment, with one count each of aggravated child molestation, child molestation, and aggravated sexual battery. The case then proceeded to trial, during which the evidence referenced *supra* was introduced, and at the trial's conclusion, the jury convicted Morris on all three counts. Subsequently, Morris obtained new counsel and filed a motion for new trial, which the trial court denied following a hearing on the matter. This appeal follows.[2]

---

[2] Although Morris did not challenge the sufficiency of the evidence against him, the evidence outlined above was sufficient for a rational trier of fact to find him guilty beyond a reasonable doubt of the charged offenses. *See Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

1. Morris first contends that the trial court erred in granting the State's motion in limine to prohibit him from cross-examining B. A.'s father regarding whether he suffered sexual abuse as a child. We disagree.

It is, of course, well established that "a defendant has the right to a thorough and sifting cross-examination, but the discretion of the trial court to determine its scope and the relevancy of the sought testimony is broad[.]"[3] And indeed, the court's discretion will not be disturbed on appeal unless it has been abused.[4] Bearing these guiding principles in mind, we turn now to Morris's specific claim of error.

Here, prior to trial, the State moved to prohibit Morris from cross-examining B. A.'s father regarding whether he was sexually molested as a child. Noting that there was some evidence in the discovery materials, in which B. A.'s father claimed to have suffered sexual abuse, the State, nevertheless, argued that such evidence was irrelevant. But Morris maintained that the evidence explained the zeal with which B. A.'s father fought to have the case reopened after the Senoia detective initially closed

---

[3] *Funck v. State*, 296 Ga. 371, 375 (3) (768 SE2d 468) (2015); *see Hughes v. State*, 297 Ga. App. 581, 584 (3) (677 SE2d 674) (2009) (noting that "the scope of cross-examination is within the sound discretion of the trial court, and irrelevant matter should be excluded" (punctuation omitted)).

[4] *See Funck*, 296 Ga. at 375 (3).

it. At the conclusion of the pretrial hearing, the court took the matter under advisement. Later, at trial (just before B. A.'s father testified), the State sought a ruling on the issue, and after hearing more argument, the trial court agreed that the evidence was irrelevant, as well as confusing and possibly prejudicial.

Under OCGA § 24-4-401,[5] the term "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In addition, OCGA § 24-4-402 provides:

> All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible.

And while our Supreme Court has held that the relevance standard codified by these statutes is a forgiving one,[6] it is not limitless.[7]

---

[5] Morris was tried in July 2014, and therefore, Georgia's new Evidence Code was applicable. *See* Ga. Law 2011, p. 99, 214 § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[6] *See State v. Jones*, 297 Ga. 156, 159 (2) n.2 (773 SE2d 170) (2015) ("Regardless of how one views the language of Rule 401, however, it is clear that the

Here, in arguing that the trial court erred, Morris's contention rests upon the assumption that B. A.'s credibility would be placed in question by evidence that her father suffered sexual abuse as a child, and thus, was overzealous in ensuring that law enforcement investigated the allegations. But there is no logical link between the fact that the victim had a father who also claimed to be a victim of sexual abuse and "a conclusion that the victim might therefore be an unreliable witness whose testimony regarding [Morris's] actions was not worthy of belief."[8] Accordingly, the trial court

relevance standard codified therein is a liberal one."); *accord United States v. Glasser*, 773 F2d 1553, 1560 n.4 (11th Cir. 1985).

[7] *See Smith v. State*, 299 Ga. 424, 427-30 (2) (a) - (c) (788 SE2d 433) (2016) (holding that State's line of questioning regarding why and where defendant got his tattoos during cross-examination of defendant was not relevant to determine identity or any other purpose); *Smith v. State*, 335 Ga. App. 497, 499-500 (2) (782 SE2d 305) (2016) (holding that testimony of a witness, who defendant sought to present at motion for new trial regarding her general experience using social media, was not relevant to establish that the removed juror, discovered to be listed as a friend of defendant's on a social media website, may not have actually known defendant because testimony regarding the witness's experience with social media was not relevant to the removed juror's experience with same).

[8] *Person v. Meachum*, 772 FSupp 69, 75 (II) (B) (D. Conn. 1991) (punctuation omitted). Because our new Evidence Code was based, in large part, on the Federal Rules of Evidence, when "the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015); *see Brooks v. State*, 298 Ga. 722, 724 (2) n. 8 (783 SE2d 895) (2016) (noting that when the General

did not abuse its discretion in finding that any evidence that B. A.'s father suffered sexual abuse was irrelevant.[9]

2. Morris also contends that the trial court erred in failing to limit the child-hearsay testimony of both the family therapist and the psychologist to the specific disclosures of sexual molestation to which B. A. testified at trial. Again, we disagree.

---

Assembly incorporated the language of the Federal Rules of Evidence in the new Evidence Code, it intended to adopt the Federal Rules as interpreted by the federal courts to the extent the interpretation is consistent with the Constitution of Georgia); *Samuels v. State*, 335 Ga. App. 819, 823 (1) (783 SE2d 344) (2016) (noting that given the similarity between Georgia's new Evidence Code and the Federal Rules of Evidence "it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts").

[9] *See Person*, 772 FSupp at 75-76 (II) (B) (holding that evidence that sexual abuse victim's friend had previously made similar sexual abuse allegations against her father was properly excluded as irrelevant in prosecution against victim's father); *cf. Hughes*, 297 Ga. App. at 584-85 (3) (holding under the old Evidence Code that evidence that victim's mother had made allegations that she herself had been molested as a child was irrelevant in prosecution for child molestation); *Mann v. State*, 244 Ga. App. 756, 760 (6) (536 SE2d 608) (2000) (same).

Under the former[10] version of Georgia's Child Hearsay Statute, OCGA § 24-3-16,

> [a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

And construing this previous version of the statute, the Supreme Court of Georgia held that, in order to comport with the Confrontation Clause of the United States Constitution and the Georgia Constitution,[11] the child whose statements are at issue

---

[10] Because the offenses at issue in this matter occurred prior to July 1, 2013, the former version of the Child Hearsay Statute applies. *See* OCGA § 24-8-820; Ga. L. 2013, p. 222, § 21 ("This Act shall become effective on July 1, 2013, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2013, shall be governed by the statute in effect at the time of such offense."). The current version of the statute changed the age of the child to which it would apply to those "younger than 16 years of age, removed the "indicia of reliability language, and added, *inter alia*, a notice provision. *See* OCGA § 24-8-820; Ga. L. 2013, § 13.

[11] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."); Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

must actually testify at trial.[12] Nevertheless, the trial court has broad discretion in "determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under former OCGA § 24-3-16 only if the trial court abused its discretion."[13]

Here, prior to the State calling the family therapist and the psychologist as witnesses, Morris moved to limit their testimony to the specific facts regarding sexual abuse to which B. A. testified, arguing that his right to a fair trial would be prejudiced if these witnesses were allowed to provide greater details about Morris's sexual abuse of B. A. than the child herself provided at trial. The trial court denied this request, and Morris now claims that it erred in doing so. Morris is mistaken.

Contrary to Morris's contention, former OCGA § 24-3-16 does not "require the child to corroborate the hearsay testimony."[14] Indeed, Morris fails to provide any

---

[12] *See Hatley v. State*, 290 Ga. 480, 483-84 (I) (722 SE2d 67) (2012) (holding that under the former OCGA § 24-3-16, if the defendant objects to the State's intent to introduce a child victims's hearsay statements, the State must present the child witness at trial).

[13] *Maurer v. State*, 320 Ga. App. 585, 588 (2) (740 SE2d 318) (2013) (punctuation omitted); *accord Estrada v. State*, 319 Ga. App. 762, 763 (1) (738 SE2d 344) (2013).

[14] *Maurer*, 320 Ga. App. at 589 (2) (punctuation omitted).

11

authority, and we have found none, requiring that B. A. be compelled to testify in detail about the sexual abuse she suffered.[15] This failure is hardly surprising given that "one of the reasons for allowing a child victim's hearsay statement to come into evidence is society's desire to spare children who are subjected to abuse from further unnecessary trauma in the courtroom."[16] Accordingly, the trial court did not abuse its discretion in denying Morris's motion to limit the child-hearsay testimony of the family therapist and the psychologist.[17]

3. Morris further contends that the trial court erred in admitting a drawing made by B. A. during a counseling session with the family therapist, which the State did not produce during discovery. Once again, we disagree.

---

[15] *See id.* (holding that there is no legal authority, pursuant to former OCGA § 24-3-16, requiring that the child victim testify about the alleged sexual abuse perpetrated by defendant).

[16] *Id.* (punctuation omitted); *accord Bunn v. State*, 291 Ga. 183, 187 (2) (b) (728 SE2d 569) (2012).

[17] *See Kirkland v. State*, 334 Ga. App. 26, 32 (2) (778 SE2d 42) (2015) ("The fact that a child witness is unresponsive or evasive in response to certain questions on the witness stand does not render the child's out-of-court statements inadmissible under the Child Hearsay Statute or violate the Sixth Amendment confrontation rights of the defendant."); *Maurer*, 320 Ga. App. at 589 (2) (holding that Sixth Amendment did not compel victim to corroborate child hearsay evidence provided by forensic interviewer).

12

OCGA § 17-6-4 (a) (3) (A) provides, in part, that

 . . . the prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph books, papers, documents, photographs, tangible objects, audio and visual tapes, films and recordings, or copies or portions thereof and to inspect and photograph buildings or places which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial or were obtained from or belong to the defendant.

And under OCGA § 17-16-6,

[i]f at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

Importantly, this Court reviews a trial court's ruling in this regard for abuse of discretion.[18]

In this case, before calling the family therapist as a witness, the State informed Morris and the trial court that the therapist brought to court a picture B. A. had drawn during one of her therapy sessions. The drawing, as previously noted, depicted B. A. crying while Morris was placing his penis in her mouth. The State then sought to admit the drawing and explained that although the drawing was never in its possession and, thus, was not included in the documents provided in discovery, it nonetheless should be admitted because the therapist's notes, which *were* included in discovery, described the drawing in considerable detail. Morris objected, but the trial court concluded that the State had not acted in bad faith and ruled that it would admit the drawing after giving Morris time to review it.

On appeal, Morris argues that the admission of B. A.'s drawing prejudiced his right to a fair trial. This argument is a nonstarter. Although Morris apparently had not seen the drawing prior to trial, he undisputedly had access to the State's discovery,

[18] *Adams v. State*, 340 Ga. App. 1, 7 (2) (795 SE2d 330 (2016); *see Burton v. State*, 330 Ga. App. 503, 506 (767 SE2d 510) (2014) (holding that the trial court's ruling on a remedy for the State's failure to comply with discovery obligations is subject to review for an abuse of discretion).

14

which contained the therapist's notes describing the drawing in significant detail. Furthermore, Morris did not present any evidence of bad faith on the part of the State with regard to this drawing. In fact, while arguing against the drawing's admission, Morris's trial counsel explicitly stated that he was not claiming that the State had acted in bad faith. Moreover, the drawing and the act depicted in it were cumulative of the testimony given by the family therapist and the psychologist, both of whom testified that B. A. claimed Morris placed his penis inside her mouth. Given that Morris has failed to show that the State acted in bad faith by not including the drawing in the discovery materials or that he suffered prejudice as a result, the trial court did not abuse its discretion in admitting the drawing over Morris's objections.[19]

---

[19] *See Adams*, 340 Ga. App. at 7-8 (2) (holding that even if the State was required to disclose 911 tape prior to trial, the admission of the evidence did not constitute reversible error given that the prosecutor did not know about the existence of the 911 tape prior to the start of trial, and thus, the State did not act in bad faith in failing to provide the 911 recording prior to trial); *McMorris v. State*, 263 Ga. App. 630, 633-34 (2) (a) (588 SE2d 817) (2003) (holding that trial court did not abuse its discretion in admitting printout of colposcope image of victim's injuries on the grounds that State failed to produce image pursuant to reciprocal discovery given the fact that State had open file policy, defendant was provided with physician's report which mentioned printout, and printout was cumulative of physician's testimony)

For all these reasons, we affirm Morris's convictions and the denial of his motion for new trial.

*Judgment affirmed. Ray and Self, JJ., concur.*